ROBERT L. WERNTZ AND GEORGE W. EVANS

*vs.*

WALTER I. WELLS AND JOHN S. STRAHORN,
RECEIVERS.

*Partnerships: Acts of agent or member of firm; when not bind-*
*ing on firm. Contractors combining to build State*
*road; construction of agreement.*

In this opinion the Court construes the agreement into which
certain contractors entered, when they all united in the con-
struction of a portion of a State road, and by which agreement
they had provided for the division of the profits according to
certain proportions. pp. 61-63

In order that a firm may be bound by the acts of a partner
or other agent acting within his authority, the person whose
acts it is sought to impute to the firm must have acted in his
character of agent, and not as principal. p. 63

*Decided January 11th, 1917.*

Appeal from the Circuit Court for Anne Arundel County.
In Equity. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, PAT-TISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert Moss,* for the appellants.

*John S. Strahorn* (with whom was *Walter I. Wells* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

In November, 1911, George Jewell was awarded a contract by the State Roads Commission for the building of a portion of the State road between Annapolis and Baltimore. He was required to give bond for the faithful performance of the contract. He was personally unable to secure the bond, or to finance the work, and in order to secure the bond and the money necessary to carry on the work, Robert L. Werntz, one of the appellants, was induced to become interested in the contract under circumstances which will be presently stated.

On December 15, 1913, the Emerson-Brantingham Implement Company and the Rittenhouse-Fleury Company, being each a body corporate, filed a bill of complaint in the Circuit Court for Anne Arundel County against George Jewell and Robert L. Werntz in which they alleged that they were judgment creditors of George Jewell; that Jewell had been a contractor for the building of certain roads for the State Roads Commission, and in connection with said work had certain business relations with Robert L. Werntz, the nature of which were unknown to the complainants; that the State Roads Commission on the 15th of February, 1913, drew its check in favor of George Jewell and Robert L. Werntz in the sum of $8,000.00, in payment for a part of said construction, which check was deposited by Werntz in the

National Bank of Baltimore to the credit of himself and Jewell, and that there was to the joint credit of said parties, at the time of filing the bill, the sum of about $2,085; that on or about March 10, 1913, the State Roads Commission drew another check to the order of Jewell and Werntz for further payment of said road construction in the sum of $1,549.00, which check is held by Jewell or his attorney, N. H. Green, unused; that the Emerson-Brantingham Implement Company had caused two attachments to be issued upon its judgment against Jewell—one of which had been laid in the hands of Robert L. Werntz, Robert Moss, attorney, and N. H. Green, attorney, and the other had been laid in the hands of the National Bank of Baltimore attaching the fund so deposited in that bank to the order of Jewell and Werntz; that George Jewell has an interest in the funds mentioned at least equal to the amounts of the complainants' judgments, with costs, which said interest, in part at least, is disputed by Werntz. The bill further alleged that since the issuance of the aforesaid checks a controversy had arisen between Jewell and Werntz over the construction of a certain contract between them as to their rights in said funds, and that in order to ascertain the ownership of said funds it was necessary that a receiver be appointed to take charge of said funds in order that the title to the said funds be legally determined, and the rights of persons and corporations therein ascertained according to law. The relief prayed for was:

"1.  That a Receiver be appointed to take charge of said two funds, or vouchers and money and other evidence of assets, and collect and bring into this Court the money so as aforesaid due the said George Jewell and Robert L. Werntz or either of them;

"2.  That your petitioners may have such other and further relief in the premises as their cause and equity may entitle them to."

The Court appointed John S. Strahorn, Walter I. Wells and Robert Moss, receivers, "with full power and authority

to take charge and possession of the two funds or vouchers, and money and other evidence of assets mentioned in said bill, belonging to the above mentioned defendants, or either of them, and collect and bring into this Court the money mentioned in said bill as due the said George Jewell and Robert L. Werntz."

The answer of George Jewell admitted that he has a substantial interest in the funds mentioned in the bill, and that he and Werntz had not been able to agree upon their respective interests in said funds. It averred that on the 27th of November, 1911, Jewell and Werntz entered into a contract "by which the said Werntz was from time to time to advance the necessary money to carry on the work and to complete the same in consideration whereof by the terms of said agreement the said Robert L. Werntz was to receive one-half of the net profits of said work or to be paid one-third of the net profits thereof; but this respondent avers that in addition to the agreement it was understood and agreed among the said Robert L. Werntz, a certain George W. Evans and this respondent that the net profits would be divided into three parts, one-third thereof to be paid to said Robert L. Werntz, one-third to said George W. Evans and one-third to this respondent."

Jewell, in his answer, consented to the appointment of a receiver to take charge of said funds "in order that the respective rights of the parties be ascertained according to law." The second and third paragraphs of the answer of Robert L. Werntz are here transcribed:

"Second—Answering further, this defendant says that he admits that for a one-half interest in a certain contract obtained by the defendant, George Jewell, for the building of a part of the State road from Annapolis to Baltimore, which is fully set forth by the written contract filed in this case, he became the special partner of said Jewell for this purpose only, and this defendant denies that said Jewell has, under the terms of said contract, sufficient interest in the funds

mentioned in said bill of complaint to pay the debts
due the plaintiffs.

"Third—Answering further, this defendant consents
to the appointment of said receivers for the purpose
of taking charge of said funds and administering the
same under the direction of this Honorable Court."

Upon the petition of George W. Evans the Court, by its
order passed October 26th, 1914, made him a party defend-
ant with leave to answer and defend. In his answer he al-
leged:

"That, under the terms of the agreement entered into
between George Jewell and Robert L. Werntz, whereby
the said Robert L. Werntz agreed to obtain the neces-
sary money to finance the said building of the part of
the State road for which the said Jewell was the low-
est bidder, before the contract for building same was
signed, he was offered by the said George Jewell one-
third of the net profits from said contract upon a con-
dition that this defendant would get the said defend-
ant, Robert L. Werntz, to finance the said building,
and when it was finally agreed that the said Werntz
would so finance it, both the said Jewell and the said
Werntz agreed that this defendant should have one-
third of the net profits from said contract.

"Answering further, this defendant says that he
never knew for many months after date of the same
that the said Jewell and Werntz had entered into the
written contract filed in this case.

"This defendant prays the Court to protect his in-
terest under this contract, and to have awarded to
him the money arising from his interest in the same."

The contract between Jewell and Werntz, mentioned in the
bill and answer and in the testimony, is here transcribed:
"*This Agreement,* Made this 17th day of November,
in the year nineteen hundred and eleven, by George
Jewell, party of the first part, and Robert L. Werntz,

party of the second part, both of Anne Arundel County, State of Maryland:

"Whereas the said George Jewell has obtained a contract to build two and two-tenths miles of the State road known as the Baltimore Boulevard, at and near Revell's Station, in the Third Election District of Anne Arundel County, Maryland; and

"Whereas in order for the said George Jewell to obtain said contract it became necessary for him to have financial backing; and ·

"Whereas the said Robert L. Werntz has this day executed a bond of indemnity to the Fidelity and Deposit Company of Maryland, a body corporate, in order to indemnify the said The Fidelity and Deposit Company which has become surety on the bond of the said George Jewell for the sum of forty-five thousand four hundred and forty-two dollars and sixty cents ($45,442.60); and

"Whereas the said Robert L. Werntz has agreed from time to time to advance to the said George Jewell such necessary money as may be absolutely necessary in order for him to carry on said work and to complete the same;

"*Now, Therefore, This Agreement Witnesseth,* That in consideration of the premises and of the sum of one dollar, the said George Jewell does hereby agree, that from the net profits of said work under his said contract he will pay without any deduction of any kind one-half of the same to the said Robert L. Werntz at such times and as soon as said profits can be ascertained, and the said George Jewell does hereby declare that he understands and knows that it is not the intent of this paper to make the said Robert L. Werntz a partner under the said contract for said road building, but that he is to be paid one-third of the net profits of said work for the risk he takes for becoming financially responsible for the work to be done by the said George Jewell.

"And the said George Jewell does further promise, covenant and agree, that in the event of any loss upon said work, that the said Robert L. Werntz shall have and possess all personal property now owned by him which has this day been bill of saled to the Robert L. Werntz to be sold and applied to the payment of such losses as the said Robert L. Werntz shall suffer by reason of his bond of indemnity, as above set forth, and does further agree that he will at all times upon the request to submit to the said Robert L. Werntz his books of account showing the money earned, the money expended and how all monies have been applied, and that he will as soon as any money is received from the State upon said contract, after paying whatever there may be actually due for labor and material upon said road, promptly turn over to the said Robert L. Werntz the balance to be paid to the said Robert L. Werntz to reimburse him for any money he may have advanced to the said George Jewell, or to the payment of any money the said Robert L. Werntz may have borrowed to advance to the said George Jewell to aid him in completing his contract.

"It is understood, except a reasonable allowance to the said George Jewell for his support and maintenance during the said contract shall be used or enjoyed until the work is completed, and the said Robert L. Werntz on his part does hereby agree and promise that he will from time to time raise for the said George Jewell such necessary money as may be necessary for the proper and expeditious carrying on of said work.

"And it is hereby mutually understood that should the said George Jewell die or become from any cause physically unable to carry on said work that the said Robert L. Werntz shall have the right to appoint and designate some proper person to conduct and complete the work in place of the said George Jewell.

"And the said George Jewell does further promise that he will at all times give his personal supervision to the work and see that all servants and employees

under him perform their work and work to advantage and will push the work to as rapid a completion as possible, consulting with the said Robert L. Werntz from time to time as to the manner of conducting said work, the best scheme of work to be enforced, and the place or places where it is best to buy the necessary materials for constructing the said road.

"Witness our hands and seals to this contract executed in duplicate this 27th day of November, in the year nineteen hundred and eleven.

"Robert L. Werntz.    (Seal)

"George Jewell.       (Seal)

"Witness: Clara C. Russell."

The receivers filed a report on the 15th day of August, 1914, by which it appeared that they had in hand the sum of $3,634, less $25 paid for premium on the receivers' bond, but it appears by the order of Court dated June 14th, 1916, they then had the sum of $4,024.72. Testimony was taken before the examiner and also before the auditor, who stated four accounts designated as accounts "A," "B," "C" and "D." The plaintiffs and Robert L. Werntz excepted to each of these accounts, and the Court by its order dated January 10, 1916, sustained the exception to each of said accounts, and remanded the proceedings to the auditor to state an account distributing the funds in accordance with the views expressed in a written opinion filed with the order. On the 7th of April, 1916, the auditor filed two additional accounts to each of which exceptions were filed. The exceptions were sustained by an order of June 14, 1916, and by which the funds in the hands of the receivers were distributed in accordance with an account which the Court appears to have stated upon its own motion. This account charged the receivers with the sum of $4,024.72, and credited them with commissions and claims against the funds, including the claim of Rittenhouse Fleury Company, amounting to $1,545.67,—

leaving the sum of $2,479.15 for distribution. This balance was distributed as follows:

To Robert L. Werntz, 1/2 .................$1,239.57
To Emerson Brantingham Implement Com-
    pany on account of claim against Jewell
    and Evans. ......................... 1,239.57
                                  ─────────
                                  $2,479.15

A counsel fee of $100.00 was allowed to Messrs. Wells and Strahorn to be borne by the creditors in proportion to their respective claim. From this order Robert L. Werntz and George W. Evans appealed.

The only questions raised by the appeal are:

*First.* To what proportion of the funds in Court for distribution are Jewell, Werntz and Evans entitled?

*Secondly.* How are their respective portions to be ascertained? and

*Thirdly.* Should any part of these funds to which Evans may be entitled be applied to the payment of the claim of the Emerson-Brantingham Implement Company?

We think it is clearly shown by the evidence, as it is admitted in the answer of George Jewell, that it was understood and agreed that George W. Evans was to receive one-third of the net profits realized from the contract, and the evidence is to the effect that it was due to his influence that Werntz was induced to become interested in the work and to give it his financial assistance. We agree with the lower Court in its holding that by the true construction of the contract between Jewell and Werntz, dated November 27th, 1911, Werntz is entitled to one-half of the net profits of the work, but Evans was not a party to that contract, was not consulted about it, and was not aware of its existence until sometime after its execution and after the work had been commenced. He was not bound by it, and it could not have the effect of lessening or destroying his rights under the

agreement which all parties admit. We, therefore, hold that under the evidence the net profits of the contract should be apportioned as follows, viz: one-half, or three-sixths to W. L. Werntz; one-third, or two-sixths, to George W. Evans, and one-sixth to George Jewell. The testimony as to the circumstances under which the contract of November 27th was concluded shows conclusively that Jewell was helpless unless he yielded to Werntz for an increased share of the profits. It is manifestly impossible to ascertain in dollars and cents the one-sixth interest of George Jewell in the net profits of the contract unless an accounting between him and the work be had. All the parties are before the Court, and all their rights should be settled in this proceeding. This ought not to be difficult to do on the evidence. Indeed, there is no reason to think that it will not be agreed to. The evidence shows that Jewell should be charged with certain amounts, and that he is entitled to certain credits. For instance, Evans and Werntz should pay their proportions of the premiums on the bond and Jewell should be credited with one-sixth of whatever amount it may be found he has diverted, and he should be allowed a reasonable sum for the rental of the two rollers used on the work. We agree with the lower Court that Robert L. Werntz should not be allowed for personal services, nor for interest charged on notes negotiated at the National Bank of Baltimore, as it was his duty under the contract of November 27th to furnish the money necessary to carry on the work.

Should any part of the profits to which it may be found that Evans is entitled be applied to the payment of the judgment of the Emerson-Brantingham Implement Company? This judgment was recovered against George Jewell for the unpaid balance on a roller which he bought and used on the work. So far as this case is concerned it is unnecessary to decide whether the undertaking to build this section of road constituted a partnership or not, because the evidence is clear that in buying the roller Jewell did not act as a member of a

partnership, or in his capacity as agent. On the contrary, it shows beyond question that he acted as principal and individually, and bought the roller for his own use, and afterwards charged rent for its use upon the work. The judgment was against him in his individual capacity. The roller was his own, and bought upon his own individual responsibility. Under such circumstances, even if it could be held that there was an existing partnership, there would be no partnership liability arising out of the purchase. The rule is well established that "in order that a firm may be bound by the acts of a partner or other agent acting within his authority, the person whose acts it is sought to impute to the firm must have acted in his character of agent and not as principal. If he acted as principal and not as agent, he alone is liable for such acts." 22 *Eng. & Am. Ency. Law*, p. 163, and cases there cited.

A motion has been made to dismiss the appeal upon the ground that the rights of all parties are concluded by the decree of January 10, 1916. from which no appeal was taken. But Werntz could not appeal from that decree because it sustained his exceptions to the auditor's account and directed a new account to be stated in conformity to the views expressed in the opinion. No appeal could be taken from the opinion of the Court. The appeal was properly taken from the order or decree of June 14, 1916, which settled and adjudicated the rights of the appellants in the fund in the hands of the receivers. The motion to dismiss must be denied. For the reasons herein expressed the order appealed from must be reversed and the cause remanded for further proceedings in conformity to this opinion.

*Order reversed, with costs and cause remanded.*